IN THE MATTER OF THE ADOPTION OF REGULATIONS FOR ELECTRICAL INSPECTION AUTHORITIES (PUBLIC UTILITIES COMMISSION DOCKET NO. 725–438). MUNICIPAL ELECTRICAL INSPECTORS ASSOCIATION OF NEW JERSEY, PETITIONER-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 8, 1974—Decided March 18, 1974.

Before Judges KOLOVSKY, FRITZ and CRANE.

*Mr. Patrick D. Healy* argued the cause for appellant (*Messrs. Healy & Falk,* attorneys; *Mr. Andrew M. Smith, Jr.,* on the brief).

*Mr. Joseph W. Ferraro, Jr.,* Deputy Attorney General, argued the cause for respondent Board of Utility Commissioners (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

*Mr. John S. Fields* argued the cause for respondent Middle Department Inspection Agency (*Messrs. Hyland, Davis & Reberkenny,* attorneys).

*Mr. Daniel J. Lyons, Jr.* argued the cause for respondent Middle Atlantic Electrical Inspections, Inc.

*Mr. Lawrence S. Schwartz* argued the cause for respondent Garden State Electrical Inspection Service, Inc.

*Mr. Sheppard A. Guryan* argued the cause for respondent Keystone Electrical Inspection Service, Inc. (*Messrs. Lasser, Lasser, Sarokin & Hochman,* attorneys; *Mr. Richard W. Vallario,* on the brief).

No briefs were filed on behalf of respondents National Electrical Contractors Association (Northern New Jersey and Southern New Jersey Chapters), Public Service Electric and Gas Company, and Jersey Central Power & Light Company.

The opinion of the court was delivered by

KOLOVSKY, P. J. A. D. This appeal attacks the validity of the several provisions of a regulation adopted by the Board of Public Utility Commissioners (Board) on April 12, 1973 which purport to regulate, control and limit the

powers of municipalities and counties, and electrical inspectors appointed by them, with respect to electrical inspections.

All parties agree that "electrical inspection" may properly be defined, as it is in the regulation, as "the act of investigating electrical construction, for the purpose of certifying conformance of such construction with applicable codes and regulations." Such compliance is obviously of concern not only to the public generally but also to the utility which is to furnish electricity and to the insurance company which may furnish insurance coverage on the structure.

Indeed, it is evident, from the legislation which first specifically authorized municipalities and counties to appoint electrical inspectors, that historically such public utilities and fire insurance companies required certificates of inspection from agencies approved by them before proceeding, respectively, to furnish electricity or to issue policies of insurance.

A chronological analysis of the statutes relating to the inspection of electrical work is necessary to an understanding and the resolution of the issues presented by this appeal.

We start with *L.* 1912, *c.* 271, as amended by *L.* 1923, *c.* 152, and supplemented by *L.* 1953, *c.* 69 (*N. J. S. A.* 40: 173–1 through 3.2). Section 1 of the statute authorized "cities" to adopt ordinances

* * * for the regulation and inspection of wires, conductors and appliances for the purpose of utilizing electrical energy for light, heat and power when introduced or placed in any building in such city; provided, however, that such regulation and inspection shall not be inconsistent with the current issue of the national electrical code and the rules and regulations for wiring of the corporation, firm or individual by which the electrical energy is to be supplied, or the existing standards of the board of public utility commissioners. *After the passage of such ordinance no person, firm or corporation shall put in use any electrical wires, appliances or currents for the purposes aforesaid, which shall not have been inspected and approved by the inspector of such city appointed for such purpose.* [Emphasis added]

The section also requires the ordinance to prescribe: (1) the method of "location, arrangement, installation and use of

such wires and appliances"; (2) the duties of the inspector which section 2 authorizes the city to appoint; and the fee, not exceeding $50, to be paid for the inspection and the issuance of a certificate of inspection.

Section 2, authorizing the appointment of the inspectors by the city's governing body, provides that they "shall have a practical and technical knowledge of the construction and operation of interior electrical wiring and appliances."

Section 3 provides that upon the passage of such an ordinance, it shall be unlawful for any electrical utility company or insurance company to require or charge for an inspection other than that certified to by the city's inspector as a condition for supplying electricity or for insuring the building. Enforcement of the latter prohibitions is delegated to the Board of Public Utility Commissioners and the Department of Banking and Insurance, respectively.

Contrary to what appellant argues, the statutory authorization for such ordinances applies not to all municipalities but "only * * * to municipalities classified as cities." *Independent Electricians, etc. Ass'n of N. J. v. Bd. of Examiners, Elec. Contr'rs, etc.*, 48 *N. J.* 413, 422, fn. 1 (1967).

In 1929 a similar statute (*L.* 1929, *c.* 339, *N. J. S. A.* 40: 23–20 through 25) was enacted authorizing counties to adopt, by resolution, similar provisions for the regulation and inspection of electrical installations in any building in the county, the county being barred however from exercising such jurisdiction in any city which may have adopted the provisions of the 1912 statute above described. In all other respects the 1929 act was substantially identical with the 1912 act.

Thus, except in cities which had adopted ordinances pursuant to the 1912 statute and in counties which had adopted resolutions pursuant to the 1929 act, the situation was exactly as it was prior to the enactment of those statutes — electric utility companies and insurance companies were free to require certificates of inspection from their own representatives or from agencies approved by them before, respectively,

furnishing electricity or issuing a policy. In cities or counties which had taken advantage of the 1912 or 1929 acts, electricity could not be furnished until a certificate had been issued by the appropriate governmental inspector.

The situation was not changed by the enactment of the Electrical Contractors Licensing Act of 1962, *L.* 1962, *c.* 162, amended by *L.* 1962, *c.* 185 (*N. J. S. A.* 45:5A-1 *et seq.*). The principal purpose of that act was to provide for the licensing of, and issuing of business permits to, electrical contractors by a State Board of Examiners of Electrical Contractors. See *Independent Electricians, etc., Ass'n of N. J. v. Bd. of Examiners, Elec. Contr'rs, etc.* 48 *N. J.* 413 (1967) and *Independent Electricians, etc., Ass'n of N. J. v. N. J. Bd. of Examiners, etc.*, 54 *N. J.* 466 (1969).

The 1962 Licensing Act recognized the continued viability of at least the 1912 statute above referred to, except as the latter statute *may* have included the power to *license* electrical contractors. So *N. J. S. A.* 45:5A-17 provides:

(a) This act shall not deny to any municipality the power to inspect electrical work or equipment or the power to regulate the standards and manner in which electrical work shall be done but no municipality shall require any business permit holder or electrical contractor licensed under this act to obtain a municipal license or business permit to engage in the business of electrical contracting in such municipality.

(b) Any licensee or business permit holder who willfully fails to comply with any municipal ordinance concerning the inspection of electrical work shall be guilty of a violation of this act.

"Any municipality," as used in the quoted section, obviously includes a city which invokes the 1912 statute. Whether it also includes a county which invokes the 1929 act presents a debatable question, particularly since *N. J. S. A.* 1:1-2 provides:

Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them.

*     *     *     *     *     *     *     *

Municipality: municipal corporation. The words "municipality" and "municipal corporation" include cities, towns, townships, villages and boroughs, and any municipality governed by a board of commissioners or an improvement commission.

The question is one of legislative intent. In our view, the subject and context of the quoted section indicates that here the legislative intent was that the provisions of *N. J. S. A.* 45:5A-17 should apply to all governmental units, *i. e.,* cities and counties which, with statutory authorization, provide for electrical inspections—whether it be a city under the 1912 act or a county under the 1929 act—and that therefore the word "municipality" should be construed to include a county. *Cf.* the following cases in which the word "municipality" as used in a statute was construed to include a county. *Union Stone Co. v. Hudson County Freeholders,* 71 *N. J. Eq.* 657, 663–665 (Ch. 1906); *Herman & Grace v. Essex County Freeholders,* 71 *N. J. Eq.* 541, 543–544 (Ch. 1906), aff'd o. b. 73 *N. J. Eq.* 415 (E. & A. 1907); *Murphy v. Hudson County Freeholders,* 91 *N. J. L.* 40 (Sup. Ct. 1917).

By *L.* 1971, *c.* 244, the Legislature adopted various amendments to the Electrical Contractors Licensing Act of 1962. One section of the 1971 act amended section 16 (*N. J. S. A.* 45:5A-16), listing the grounds for which the Board might refuse to grant or suspend or revoke any license or business permit. Included among new grounds were the following:

(g) [failure] to secure inspection of electrical construction by an inspection authority approved by the Board of Public Utility Commissioners or *otherwise provided by law;* or

(h) [failure] to perform electrical construction in conformance with standards of the National Electrical Code then in effect and the *standards, if any, of the municipality wherein such work is performed.* [Emphasis added]

The 1971 act, in sections 2 and 3 thereof, also added two new sections to the original act, reading as follows:

2. The Board of Public Utility Commissioners of the Department of Public Utilities shall approve all electrical inspection authorities for inspection of electrical construction work by an electrical contractor licensed under the provisions of P. ·L. 1962, c. 162 [*N. J. S. A.* 45:5A–1 *et seq.*] The Board of Public Utility Commissioners is authorized to promulgate all rules and regulations necessary to effectuate the purposes of this act.

3. All electrical inspection agencies approved by the Public Utilities Commission shall be accepted by electrical utilities for electrical inspection work in the State of New Jersey.

It is essential to recognize that the last two sections, although now appearing in *N. J. S. A.* under *Title* 48, "Public Utilities", as *N. J. S. A.* 48:7–14 and 15, are amendments to the Electrical Contractors Licensing Act of 1962 and as such are limited by the provision found in section 17 of that act (*N. J. S. A.* 45:5A–17, quoted above) preserving the inspection power of municipalities.

In view thereof, we are satisfied that the power granted to the Board of Public Utility Commissioners by sections 2 and 3 of the 1971 act (*N. J. S. A.* 48:7–14 and 15) does not include the power to modify in any way the existing power and authority of cities or counties which had adopted, or do adopt, an ordinance (in the case of a city) or a resolution (in the case of a county) pursuant to the 1912 or 1929 act. The power to approve "all electrical inspection authorities" found in *N. J. S. A.* 48:7–14 refers, in our opinion, to authorities other than cities or counties which had invoked or hereafter invoke the 1912 or 1929 act.

Further, in view of the continued viability of the 1912 and 1929 acts, the Board of Public Utility Commissioners does not have the power to adopt regulations whose effect is to repeal the express provisions of those acts (*N. J. S. A.* 40:173–1 and *N. J. S. A.* 40:23–23) mandating an inspection and approval of electrical inspections, in cities and counties which have proceeded under those acts, by the governmental inspectors appointed pursuant thereto.

We therefore conclude that the following sections of the Board's regulation are invalid insofar as they purport to

apply to a city and a county which has invoked or may hereafter invoke the provisions of the 1912 and 1929 acts:

1. Section 14:5–4.5(a), which would require the city or county to accept certificates of approval issued by private electrical inspection authorities certified by the Board.

2. Section 14:5–4.5(b), which would prohibit the city or county from requiring an inspection certificate issued by its own inspector and from refusing to accept a certificate from "other electrical inspection authorities certified by the Board."

3. Section 14:5–4.5(c) and section 14:5–4.4(a), which would compel the city or county to apply to the Board for a certificate authorizing it to act as an electrical inspection authority, and, further, would limit the right to so apply to cities or counties "who have been conducting inspections of electrical construction with their own inspectors prior to June 24, 1971." The latter provision is, in effect, an impermissible attempt by the Board to usurp the Legislature's prerogative and to repeal, as of June 24, 1971, both the 1912 and 1929 acts, this by barring any city or county which had not invoked the provisions of those acts prior to that date from thereafter doing so.

4. Section 14:5–4.5(d), which would bar the city or county from requiring "duplicate electrical inspections from a customer who has his electrical construction inspected by an electrical inspection authority certified by the Board."

5. Section 14:5–4.4(d), which would authorize and compel a utility in such a city or county to accept determinations resulting from inspections made by other than governmental inspectors.

6. Section 14:5–4.5(h), which would make the jurisdiction of the city or county inspector concurrent with that of other electrical inspection authorities certified by the Board unless the Board, upon petition, hearing and notice, should determine in particular circumstances that "the public interest requires that the [city's or county's] authority shall be exclusive."

7. Section 14:5–4.6, insofar as it applies to the rates to be charged for inspections. Under the governing statutes above referred to, a city may fix an inspection fee not exceeding $50, *N. J. S. A.* 40:173–1, and a county may fix an inspection fee not exceeding $10, *N. J. S. A.* 40:23–21.

Further, to the extent that other provisions of the regulations, *e. g.* those relating to liability and workmen's compensation insurance (sections 14:5–4.18 and 4.19) and those calling for payment of registration fees by the city or county to the Board (section 14:5–4.28), impinge on the power and authority granted by the statutes to a city or county proceeding under the 1912 and 1929 acts, respectively, those provisions are also invalid.

What we have written is not to suggest that the Board has no part to play with respect to inspections made in a city or county which elects to proceed under the 1912 or 1929 act. As we have already noted, both those acts require—by *N. J. S. A.* 40:173–1 and *N. J. S. A.* 40:23–20, respectively—that:

> Such regulation and inspection shall not be inconsistent with the current issue of the national electrical code and the rules and regulations of the person by whom the electrical energy is to be supplied, or the *existing standards of the board of public utility commissioners.* [Emphasis added]

and by *N. J. S. A.* 40:173–2 and *N. J. S. A.* 40:23–22, respectively, that any inspector appointed "shall have a practical and technical knowledge of the construction and operation of interior electrical wiring and appliances."

In light of those statutory provisions, we find no invalidity in the provisions of:

1. Section 14:5–4.5(e), which requires any inspector employed by a city or county to obtain a license from the Board pursuant to section 14:5–4.29; provided, however, that incumbent city or county inspectors are given a reasonable time to apply and qualify for the license.

2. Section 14:5–4.5(f), prohibiting any inspector from having "any interest or relationship to" any electrical con-

tractor, any manufacturer or seller of electrical appliances, machinery, wiring, hardware or apparatus, or any utility or other entity supplying electrical energy.

3. Section 14:5–4.9, setting forth the following "standards for inspection":

Inspections shall be made to insure compliance with the National Electrical Code, which the Board hereby adopts and incorporates herein, regulations and orders of the Board and requirements of the utility as filed with the Board, in effect at the time of construction.

4. Sections 14:5–4.24 and 4.25, requiring inspections to be made at the request of the Board.

5. Section 14:5–4.5(g), prohibiting any such city or county from adopting

* * * any electrical code that is not consistent with the National Electrical Code, and the rules or regulations for wiring of the utility or the existing standards and regulations of the Board.

The challenge to the validity of so much of section 14:5–4.5(g) as prohibits any city or county from adopting "any electrical code that is not consistent with the National Electrical Code" ignores that the identical provision appears in the statutes from which the city or county derives its power to engage in electrical inspections. *N. J. S. A.* 40:173–1 and *N. J. S. A.* 40:23–20. Contrary to what appellant argues, such a provision is not an unconstitutional delegation of legislative power to a private agency. *Independent Electricians, etc., Ass'n. of N. J. v. N. J. Bd. of Examiners, etc.,* 54 *N. J.* 466, 482–483 (1969) ; see also, *State v. Hotel Bar Foods,* 18 *N. J.* 115 (1955) ; *Male v. Renda Contracting Co., Inc.,* 64 *N. J.* 199, 201 (1974).

Finally, appellant's suggestion that the Board has, by its regulations, unlawfully delegated to private agencies—electrical inspection authorities certified by it—such power as may be vested in it "to police electrical construction" is

without substance in view of the express provisions of *N. J. S. A.* 48:7–14 authorizing the Board to approve private "electrical inspection authorities."

The cause is remanded to the Board of Public Utility Commissioners for further proceedings consistent with this opinion.