**UNITED STATES of America,**

v.

**George W. HOSKINS, Lisa J. Hoskins, Webster Publishing Company, Ltd., Webster Home Mailing Service, Inc. and World Wide Employment Service, Inc., Defendants.**

**No. CR–85–10C.**

United States District Court, W.D. New York.

June 27, 1986.

---

Salvatore R. Martoche, U.S. Atty. (Martin J. Littlefield, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for U.S.

Boreanaz, Baker & Humann (Patrick J. Baker, of counsel), Buffalo, N.Y., for defendant George W. Hoskins.

Miller, Farmelo, Cane & Greene (Norman E.S. Greene, of counsel), Buffalo, N.Y., for defendant Lisa J. Hoskins.

Falk & Siemer (Donald G. McGrath, of counsel), Buffalo, N.Y., for defendants Webster Pub. Co., Ltd., Webster Home Mailing Service, Inc., and World Wide Employment Service, Inc.

CURTIN, Chief Judge.

Defendants George W. Hoskins; his daughter, Lisa Hoskins; and corporations founded by Mr. Hoskins are the subjects of an 18–count indictment charging them with mail and wire fraud, 18 U.S.C. §§ 1341 and 1343, and with conspiracy to commit the underlying substantive crimes.

Several matters are pending before the court: 1) Defendants' appeal of the Magistrate's order denying their motion to require the government to bear the cost of photocopying certain records; 2) Defend-

ants' motion for suppression of items seized pursuant to a warrant and for a hearing on that motion; and 3) The government's motion for an order precluding defendants from introducing certain physical evidence at trial pursuant to Fed.R.Crim.P. 16(d).

Oral argument was heard on May 23, 1986. At the request of the court, Assistant United States Attorney Martin J. Littlefield filed an additional affidavit on May 28, 1986. The motion was taken under consideration on May 28.

### 1) *Appeal of the Magistrate's Order*

On June 12, 1984, the offices of the defendant corporations were searched pursuant to a warrant. Before any indictment was returned, the corporate defendants moved for a return of property seized pursuant to Fed.R.Crim.P. 41(e). The Honorable John T. Elfvin denied the motion, but ordered the government to allow inspection and copying of the items seized. The government moved for clarification as to who was to pay for the expense of copying. Judge Elfvin ruled that the government was not required to pay for copying, and this ruling was affirmed by the Second Circuit Court of Appeals in April of 1986. *Premises Known as Statler Towers v. United States*, 787 F.2d 796 (2d Cir.1986).

After the indictment was returned and the case assigned to this court, the defendants moved before United States Magistrate Edmund F. Maxwell for an order requiring the government to provide, at its expense, copies of items seized in the June 1984 search. The Magistrate denied that motion, relying on Judge Elfvin's decision. Defendants now appeal the Magistrate's denial to this court.

In its affirmance of Judge Elfvin's decision, the Second Circuit looked to the rules governing criminal discovery as an analogy noting that in that context, the expense for copying clearly falls on defendants:

Absent exceptional circumstances, we believe it proper to leave the burden of duplicating costs on a party who unsuccessfully moves before indictment for return of property seized under warrant. The government has a legal right to the evidence at that stage. Moreover, Rule 16 of the Federal Rules of Criminal Procedure suggests that the government need not pay to retain it. While Rule 16 governs criminal discovery and does not apply to pre-indictment motions such as those brought under Rule 41(e), it provides a useful analogy for resolving the costs issue. In the discovery context, Rule 16's clear import is that the defendants, at least nonindigent ones, must pay the cost of copying documents legally held by the government.

*Id.* at 798 (citation omitted).

On May 8, 1986, George Hoskins, as the former President of Webster Home Mailing Service, Inc., signed an affidavit stating that the company had ceased all business operations and is unable to pay for copying costs. Counsel for Webster Home Mailing Service, Inc., urges the court to issue an order directing the government to pay for copying costs because of the indigency of the corporation.

Although Webster Home Mailing Service may be indigent, there has been no suggestion that any of the remaining defendants are indigent. The same attorney represents all the corporate defendants, and Webster Home Mailing Service would undoubtedly have access to any copies obtained by the other corporations. George and Lisa Hoskins also have funds to obtain copies.

Furthermore, indigent corporate defendants cannot be assigned counsel by the court or provided with copies of documents using funds available under the Criminal Access to Justice Act. Under these circumstances, there are no funds from which the court may draw money for copying costs.

In addition, all defendants have been permitted to review and inspect the records. They have had the opportunity to take any notes they believe are necessary. The indigency of one of the corporate defendants does not, under the circumstances, require a reversal of the Magistrate's order. The

Magistrate's order is affirmed. Defendants are given leave to reapply to this court for relief if warranted by future circumstances.

The Assistant United States Attorney is directed to determine, at an early stage, what documents would be relied upon at trial and to give this information to the defendant. In this way, defendants will be able to determine what specific documents they need copied.

### 2) *Suppression Motions*

#### A. *Effect of Judge Elfvin's Pre-Indictment Decision*

■ In his decision denying the corporate defendants' Rule 41(e) motion for a return of property, Judge Elfvin also found that the search warrant was supported by probable cause and that it was not overbroad. The government contends that defendants are now bound by that decision. For the reasons below, the court rejects that contention.

This is the first time defendants seek suppression of evidence in a criminal proceeding. The purpose of a motion under Rule 41(e) is for a return of property seized. Since no indictment had been returned at the time of Judge Elfvin's decision, the motion was not "treated also as a motion to suppress under Rule 12." (Fed. R.Crim.P. 41(e).)

As was pointed out by defense counsel Norman E.S. Greene during oral argument, the granting of a Rule 41(e) motion has the effect of suppressing that evidence at future proceedings. Mr. Greene noted that, for this reason, courts frequently deny literal relief under Rule 41(e). Instead, under some form of equitable jurisdiction, courts order that copies be made available, as Judge Elfvin did. In many cases, at the pre-indictment stage, this equitable relief is sufficient for purposes of the movant, who may be satisfied with copies of seized documents. Before the indictment is returned, he may lack the incentive to make a full-scale attack on the legality of the search. Under these circumstances, it would not be

appropriate or fair to preclude a later suppression motion.

Furthermore, since Judge Elfvin viewed the affidavit in support of the warrant *in camera*, defendants have not yet had the opportunity to make their arguments as to its validity. Also, only the corporate defendants, not George and Lisa Hoskins, were parties to the proceeding before Judge Elfvin. Finally, defendants did not raise the issue of the scope of the search exceeding the parameters of the warrant before Judge Elfvin.

#### B. *Probable Cause*

■ Defendants claim that the search warrant signed by Magistrate Maxwell was not based on probable cause. The Magistrate relied on the affidavit of U.S. Postal Inspector Ralph B. Harding. I find the affidavit provided probable cause for the issuance of the warrant.

The affidavit established the following: the Postal Service and various government agencies had received in excess of 1,500 complaints regarding the corporate defendants and their sub-units. Inspector Harding was assigned to investigate and appointed an agent of the grand jury. Webster Publishing Co., Ltd., Webster Home Mailing Service, and Worldwide Employment Services, Inc., had offices in the Statler Towers in Buffalo, New York (¶¶ 2 and 18). John J. Kelly, Director of Security at the Statler Towers, told Harding that Webster Publishing Co., Ltd., used suites 225, 1468, and 1470 for offices and storage space (¶ 9). Donald Brunner, the accountant who prepared tax returns for Mr. Hoskins and his businesses, said the accounts of the various business entities were co-mingled (¶ 18). Many of the businesses were actually "product lines" of Worldwide Employment Service, Inc. (¶ 12).

Paragraph 16 of the affidavit detailed the results of an "analysis" by Inspector Harding and his assistants of the telephone solicitations and advertisements used by the corporations. The inspector listed various claims made by the company and explained why such claims may well be false

or misleading. Based on the information set out in detail in the affidavit, the inspector concluded that the businesses were engaging in wire and mail fraud. Finally, in addition to the affidavit, it was noted that furniture and filing cabinets were being removed from the offices to a van parked outside on June 12, 1984, the day the warrant issued.

Defendants urge that paragraphs 13 and 15 are based on "stale" information. They point out that, in paragraph 15, the inspector fails to identify the "current" and "former" employees and does not say how these employees came to conclude that the businesses practices were illegal. The court agrees with the defendants' position as to paragraph 15. However, even without considering either paragraph, the warrant still provides ample probable cause.

### C. Particularity of the Warrant

Defendants maintain that the warrant issued here is a "general warrant" and, as such, violative of the particularity requirement of the fourth amendment of the United States Constitution. At oral argument, the government conceded that the warrant was extremely broad in scope, but maintained that it does not violate the Constitution.

The warrant authorized a daytime search of defendants' offices at the Statler Towers and of a van parked outside the offices.[1] It permitted an extensive search for, among other things, business, personnel, and financial records, any banking records, customer lists, records of mailings or telephone calls, stamps, envelopes, and telephones.[2]

■ Courts must be cautious when dealing with search warrants for documents. A warrant must be sufficiently particular so that nothing is left to the discretion of the agents. *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). However, the complexity of a criminal scheme should not be used as a shield to keep authorities from obtaining documents. *Id.* at 481 n. 10, 96 S.Ct. at 2749 n. 10. In that case, the warrant basically limited the search to documents involving a particular parcel of land.

■ In cases in which affidavits or other evidence establishes probable cause to believe in the existence of a pervasive scheme to defraud, all business records may be seized. *United States v. Brien*, 617 F.2d 299 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); and *United States v. Offices Known as 50 State Distributing Co.*, 708 F.2d 1371 (9th Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). *But see Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir.1985).

---

1. The warrant permitted seizure of the following property:

    Business, personnel and financial records of the entities named herein.

    Any records relating to the employment of solicitors, telephone personnel, and office personnel.

    Lists of customers names and addresses and amounts of contributions and related records including payments and payment receipts, memorandum and notes;

    U.S. Mail and stamps and envelopes and correspondence;

    Any banking records of the entities named herein including but not limited to statements, checks and checking books, and deposit slips;

    Any records of disbursement of funds, including but not limited to payroll, utilities, rent, telephone bills, daily sales figures;

    Sales pitch sheets and any other material relating to the solicitation by phone performed by any person on behalf of the entities named herein.

    Any and all articles of incorporation, certificates to conduct business, certificates or registrations to solicit within the State of New York or the United States;

    Contracts or any written agreements between any and all parties of the entities named herein, either between one another, with advertising agencies, service agencies, or other entities performing or receiving goods, services, money from the entities listed herein.

    All telephones and telephone equipment installed;

    All of which property relates to the operation and functioning of the entities described herein and persons soliciting or otherwise performing work on their behalf as described in the attached sealed affidavit.

2. At oral argument, the court was informed that Messrs. McGrath and Greene, defense counsel in this action, were present during the search.

The Second Circuit has adopted this test. In *National City Trading Corp. v. United States*, 635 F.2d 1020 (2d Cir.1980), the court noted that since there was probable cause to believe that an entire business was permeated with fraud, the agents could seize all records described in the warrant. (*Id.* at 1026.) Similar to the warrant in the instant case, the warrant in *National Trading* involved personnel files, financial records, and customer files. (*Id.* at 1023.) *See generally United States v. Zanche*, 541 F.Supp. 207 (W.D.N.Y.1982), where there was probable cause to support the seizure of documents falling into one of nine broad categories.

■ Inspector Harding's affidavit provided probable cause to believe that the entire operations of the businesses were permeated with fraud. Indeed, it provided probable cause to believe that the very purpose of the businesses may have been fraudulent. Under these circumstances, further specification of the documents to be seized than was provided in the affidavit was not possible.

> The warrant left the executing officers with no discretion. While the seizure was extraordinarily broad, and in that sense "general," under the particular facts of this case the scope of the warrant was justified. It was not possible through more particular description to segregate those business records that would be evidence of fraud from those that would not, for the reason that there was probable cause to believe that fraud permeated the entire business operation of 50 State.

*United States v. 50 State Distribution, supra* at 1374.

The cases which have held similar wide-ranging warrants to be unconstitutional are distinguishable. Defendants point to *United States v. Abrams*, 615 F.2d 541 (1st Cir.1980), in support of their position. In that case, however, the search involved a doctor's office and confidential medical records. The warrant authorized a search for all business, billing, and medical records. Records of Medicaid and Medicare patients, as well as those of patients not on Medicaid or Medicare, were seized. The court held that the warrant failed to give explicit guidance to enable the agents to determine which records could be seized. Additionally, the supporting affidavit in that case did not provide probable cause to seize all Medicaid and Medicare records. *Id.* at 543 and 544 n. 6 and n. 7.

In *Lafayette Academy, Inc. v. United States*, 610 F.2d 1 (1st Cir. 1979), a school was under investigation for fraudulent activities relating to the Federal Insured Student Loan Program [FISLP]. No attempt was made, however, to limit the warrant to documents relating to FISLP. Instead, the warrant provided for seizure of virtually all of the school's records and was held unconstitutional.

In light of the above, although the warrant in the instant case is unusually broad in scope, it is not unconstitutionally so.[3]

*D. Search Exceeding the Scope of Warrant*

Finally, defendants urge that even if the warrant was sound, the search conducted exceeded the scope of the warrant. They seek a hearing on this issue.

In the affidavit filed May 28, 1986, Assistant United States Attorney Littlefield provided a list of all items seized, of all items which have been returned to the defendants, and of those items still retained by the government. Since defendants do not challenge the locations searched but only the nature of the items searched for and seized, many of which have been returned, the point of the hearing is unclear.

Now that defendants have reviewed Mr. Littlefield's affidavit and the attached lists, they shall state whether they still seek a hearing and, if so, what would be taken up at the hearing and what purpose it would serve. Defendants shall make this filing on or before July 14, 1986.

---

**3.** The court does note that a few items listed in the search warrant, such as stamps, blank envelopes, utility bills, and rent bills were clearly not evidence of suspected criminal activity. However, since the government has apparently returned these items, the motion to suppress them is moot. In the context of this case, their inclusion does not invalidate the warrant.

### 3) *Government's Rule 16(d) Motion*

The government moved for an order pursuant to Fed.R.Crim.P. 16(d)(2) precluding defendants from introducing any physical evidence at trial. The government claims defendants have failed to provide requested reciprocal discovery as required by the Rules. During oral argument, the parties agreed to meet and attempt to resolve this issue.

Defendants' motion to suppress items seized pursuant to the warrant based upon lack of probable cause and lack of particularity is denied. Their motion for a hearing on the scope of the search is held in abeyance. The Magistrate's order regarding copying costs is affirmed.

See also, D.C., 591 F.Supp. 403.

The court will meet with the parties on July 19, 1986, at 9:30 a.m. for further discussion on the motion for a hearing and reciprocal discovery.

So ordered.