**UNITED STATES of America, Plaintiff–Appellee,**

v.

**UNIMEX, INC., Defendant–Appellant.**

**No. 91–50230.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1992.

Decided April 15, 1993.

Stanley I. Greenberg, and Abby Besser Klein, Los Angeles, CA, for defendant-appellant.

Nancy B. Spiegel, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WIGGINS, KOZINSKI and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Unimex, Inc. is a corporation convicted of conspiring to launder drug money and to fail to file currency transaction reports in violation of 18 U.S.C. § 371, and of willfully failing to file currency transaction reports in violation of 31 U.S.C. §§ 5313, 5322(b). We have affirmed, in a separate unpublished disposition, the conviction of Unimex's president, Raul Velasquez, on related charges. We reverse the corporation's conviction, because it was denied due process of law under the Fifth Amendment and its right to counsel under the Sixth Amendment. Unimex was effectively prohibited from defending itself.

Unimex was not represented by counsel in its trial.[1] All of its assets had been seized prior to trial. Based upon affidavits and such additional evidence as it might present at a hearing showing that much or all of its assets were untainted by crime, Unimex sought return of $100,000 of the $2,000,000 seized, to retain counsel. The motion was denied without an evidentiary hearing. Without money, Unimex could not retain counsel. Counsel could not be appointed for it under the Criminal Justice Act, because it is a corporation. Counsel could not ethically represent Unimex on contingent fee. Unimex could not lawfully have some lay director or shareholder defend it in court. There was nothing Unimex could do to defend itself.

Unimex may have been nothing but a front for laundering drug money, and its criminal penalties entirely just. The corporation as such is an abstraction which, since it could not be imprisoned, has no personal liberty interest at stake. But Unimex may have other shareholders who have put honest money into it, and other officers and employees who thought they were running it as an honest business, and the corporation and other people dependent on it may be innocent victims of Velasquez's crimes. Because Unimex was de-

---

1. Velasquez's trial attorney represents Unimex in this appeal, but represented only Velasquez and not Unimex at the trial and sentencing of Unimex. He explained to the trial judge that Velasquez was a "part owner" of Unimex, and that as Velasquez's attorney, he could not represent Unimex as well as Velasquez because of a possible conflict of interest. Docket #94.

nied the opportunity to defend itself, no participant in the trial had an unalloyed interest in showing that this was true. The practical effect of a combination of laws and rules was to prohibit Unimex from defending itself, so the proceeding was unfair, and the verdict unreliable, as to Unimex.

## I. Facts.

The government called the vice president of Unimex as its first witness, to explain Unimex's business. Unimex was in the business of buying and selling foreign currency and operating a travel agency. It had three branches, with roughly 20 employees for all three, where customers could change Mexican and American money, wire money to their families in Mexico, and buy airplane tickets. The business kept books and receipts, paid withholding taxes on its employees, and appeared to be a legitimate business providing financial services largely to people in the United States with family ties in Mexico. The business was losing money, so it was for sale, but the vice president testified that he had no idea Unimex was a front for money laundering.

This case arises out of an IRS sting operation. IRS agents posing as drug dealers met with Velasquez at Unimex's main office and asked him to launder drug money. He told them that he would, by putting the money through Unimex and using it to cash checks, but he needed to postpone the money laundering because he had just bought some check cashing businesses and state banking officials were scrutinizing his books. He told the agents that he would have to fill out a currency transaction report if the transaction went through Unimex, and that he knew they did not want to do that. Velasquez offered to take the cash to Tijuana and exchange it for a cashier's check at a Mexican bank.

Velasquez told the IRS undercover agents to deliver the cash to the branch manager at a Unimex office down the street. He said there would be no record of the transaction in Unimex's books because the transaction was not going to "go through the business of Unimex." One of the agents delivered $48,000 in cash to the manager at the Unimex branch, and she assured him that the transaction would not produce a paper trail. The next day, Velasquez delivered a $48,000 cashier's check to the undercover agent. Similar money laundering transactions occurred subsequently.

Velasquez suggested to the undercover agents that his associates in Mexico would be interested in selling Unimex for one million dollars. Velasquez said that his associates had laundered $40 million through Unimex. He showed the undercover agents two sets of books for Unimex, one with legitimate transactions, and one showing hundreds of thousands of dollars of money laundering daily.

Velasquez also asked if the agents could furnish 25 kilograms of cocaine. They agreed to do so. When Velasquez said he had the money ready, he showed the agents a large amount of cash in Unimex's safe, and the agents showed Velasquez the cocaine in the trunk of a car in the Unimex parking lot. The undercover agents handed Velasquez and his associate 15 kilograms each, and then arrested them. A search of the two safes in the Unimex vault later that day revealed approximately $1,105,000 in cash, contained in bags, a cereal box and a VCR box.

Immediately after Velasquez's arrest, all the assets of Unimex were seized pursuant to a warrant. Velasquez and Unimex were both indicted for conspiracy and other crimes relating to money laundering. The indictment also included a count charging that all of Unimex's property was subject to forfeiture under 18 U.S.C. § 982(a)(1). The government filed a parallel civil action against Unimex for forfeiture of all its property under 18 U.S.C. § 981 and 21 U.S.C. § 881 for substantially the same conduct.

After the jury retired, the government dismissed the criminal forfeiture count, so that is not before us on this appeal. Unimex was convicted of the crimes with which it was charged, and fined $2 million. The judgment recited that the amount of the fine was the amount seized and subject

to the pending civil forfeiture proceeding, and the fine was suspended "unless and until the seized funds are returned to the defendant. In such event, the $2 million fine is to be paid immediately." In other words, if the government won a civil forfeiture of the money seized, the only criminal sanction would be $1,000 in special assessments and the conviction itself. If the government lost the forfeiture case, then it would get the money anyway as a fine. Its victory in the criminal case eliminated the government's risk if it were to lose the forfeiture case.

## II. Analysis.

Unimex claims a violation of its Sixth Amendment right to counsel. We review de novo. *United States v. Bohn*, 890 F.2d 1079, 1080 (9th Cir.1989).

■ Counsel is essential for a corporation at a trial, because it cannot appear pro se. A criminal defendant must be present at trial, except for specified exceptions. Fed.R.Crim.P. 43(a). Among the exceptions to physical presence is that "[a] corporation may appear by counsel for all purposes." Fed.R.Crim.P. 43(c)(1). Velasquez was present on his own behalf, not as an officer of Unimex. No one purported to appear on behalf of Unimex. No one could, except an attorney admitted to practice in the Central District of California. The Central District has a local rule, similar to that in most courts and jurisdictions, providing that "[a] corporation ... may not appear in any action or proceeding pro se." C.D.Cal., Loc.R. 2.9.1. "It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony*, — U.S. —, —, 113 S.Ct. 716, 717, 121 L.Ed.2d 656 (1993).

■ Unimex argues and the government concedes that a corporation has a Sixth Amendment right to be represented by counsel. *See American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 (D.C.Cir.1984); *United States v. Rad–O–Lite of Philadelphia, Inc.*, 612 F.2d 740, 743 (3rd Cir.1979). The government cor-

rectly argues that a defendant has no right to use the government's money to retain counsel of its choice, and forfeitable money belongs to the government. *Caplin & Drysdale v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

*Caplin & Drysdale* by its rationale suggests two exceptions to the general rule that a forfeiture does not impair the constitutional right to counsel. First, it says that "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Id.* at 624, 109 S.Ct. at 2651. That statement suggests that those who lack the means to hire counsel may have a cognizable complaint if they are not provided with court appointed counsel. The district court did not appoint counsel for Unimex.

■ Although Unimex has not argued that it was entitled to appointed counsel, we must consider whether it was, because the availability of appointed counsel would render doubtful the claim of interference with the right to counsel on account of the pretrial seizures. *See Caplin & Drysdale*, 491 U.S. 617, 109 S.Ct. 2646 (1989); *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). The Criminal Justice Act provides for appointment of counsel for an indigent "person," but does not say whether a corporation is a "person" for purposes of appointment of counsel. 18 U.S.C. § 3006A(a). The word "person" in a federal statute includes corporations "unless the context indicates otherwise." 1 U.S.C. § 1. In the statute providing for appointment of counsel, the context does indeed "indicate otherwise." *Cf. Rowland*, — U.S. at —, 113 S.Ct. at 717. The statutory context includes a list of classes of persons eligible, with catch-all clauses for a financially eligible person who "is entitled to appointment of counsel under the sixth amendment to the constitution" or "faces loss of liberty." 18 U.S.C. § 3006A(a)(1)(H), (I). If the purpose of the statute is to assure that criminal defendants' constitutional right to appointed counsel is protected, then no appointments

are needed for corporations. Being incorporeal, corporations cannot be imprisoned, so they have no constitutional right to appointed counsel. *See Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). The Sixth Amendment accordingly does not provide for appointment of counsel for corporations without sufficient assets to retain counsel on their own. Although authority is scarce, we conclude from context that the CJA does not so provide either. *United States v. Hoskins*, 639 F.Supp. 512 (W.D.N.Y.1986), *aff'd without pub'd op.*, 875 F.2d 308 (2nd Cir. 1989). Thus, corporations have a right to counsel, but no right to appointed counsel, even if they cannot afford to retain their own.

■ Neither the Sixth Amendment nor the CJA entitle a corporation to appointed counsel, so Unimex's right to counsel was not violated by failure to appoint counsel for it. But the fact that Unimex has no right to appointed counsel does not mean that seizure of its assets cannot violate its right to obtain counsel with its own money. The seizure of Unimex's assets effectively denied it the opportunity to obtain counsel with its own money, if its assets were not forfeitable, and counsel was not appointed to provide a defense, so we must decide whether that seizure, without a hearing on the forfeiture, violated the Sixth Amendment.[2]

The second exception suggested by *Caplin & Drysdale* involves specific instances of abuse. 491 U.S. at 634, 109 S.Ct. at 2657. Generally, a pretrial seizure of forfeitable assets has been held not to violate the defendant's Fifth and Sixth Amendment rights, but the Supreme Court has explicitly reserved the question of whether a pretrial seizure based on a finding of probable cause would violate the Due Process Clause if the defendant were granted no hearing. *United States v. Monsanto*, 491 U.S. 600, 615 n. 10, 109 S.Ct. 2657, 2666 n. 10, 105 L.Ed.2d 512 (1989).

Unimex tried unsuccessfully to get an adjudication on the merits regarding whether $100,000 or more of untainted money had been seized. It filed a motion in the criminal case for release of $100,000 of the more than $2 million in assets seized, so that it could retain counsel. Unimex's bookkeeper, in an attached affidavit, swore that he had kept Unimex's books for over a year and observed its day to day operations. He swore that Unimex engaged in extensive legitimate activities, with approximately 30 employees, for thousands of legitimate customers. The activities were exchanging Mexican pesos for dollars, transmitting funds abroad for thousands of legitimate customers, and operating a travel agency. It had considerable assets, and he had always observed Unimex to engage lawfully in its business activities. The government responded that in its affidavit submitted ex parte in support of the seizure, its agent had sworn that Unimex in its entirety was a front for money laundering.

The court denied the motion for release of funds, but did not decide whether Unimex was largely or entirely legitimate, or operated in its entirety as a front. Instead, the district judge stated that the motion should be made in the civil forfeiture case, then pending in the same district before another judge. A motion was made before that judge, but he denied it as well, without explanation. Thus, Unimex never had a pretrial opportunity to have the court determine, on the evidence, whether the $100,000 was its own money or forfeitable.

■ We review the district court's denial of a Rule 41(e) motion de novo. *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 855 (9th Cir.1991). We cannot accept the proposition that the district court lacked jurisdiction over the res because of the civil forfeiture action pending in the same district. *Cf. Republic National Bank v. United States*, — U.S. —, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992). By the terms of Rule 41(e), Unimex could move for the return of its property, as "a

---

**2.** Unimex has not raised the question of whether it was improperly convicted in absentia, so we

do not rule upon that issue.

person aggrieved" by the seizure of its property, in "the district court for the district in which the property was seized." The district court consisted of all the judges of the United States District Court for the Central District of California, 28 U.S.C. § 132(b), so Unimex's motion could not properly be rejected as being in the wrong court.[3]

◾ Unimex filed affidavits which, if true, tended to show that Unimex was an innocent victim of Velasquez's crimes, and that the $100,000 sought was not forfeitable. Although the forfeiture, if granted, would relate back to the time of the offense, nevertheless title had not automatically shifted to the government at the time of the conduct. *See United States v. A Parcel of Land,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). To determine whether a hearing is required, the court must decide whether the moving papers filed, including affidavits, are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. If the allegations are sufficient, and factual issues are raised, a hearing is required." *Cohen v. United States,* 378 F.2d 751, 761 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). The district court should have considered itself to have jurisdiction exercisable by the judge assigned the criminal case pursuant to 28 U.S.C. § 132, determined whether Unimex was entitled to relief, and if the matter turned on a disputed factual issue, allowed Unimex to present evidence at a hearing scheduled "at a meaningful time and in a meaningful manner." *United States v. Crozier,* 777 F.2d 1376, 1383 (9th Cir.1985) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In the context of this case, for it to have any practical value, the hearing had to be in time to retain counsel for the criminal case. Once the criminal case was over, the civil case did not matter, because the fine in the criminal case was designed to take all of Unimex's property regardless of how the civil forfeiture case came out.

◾ The government prevented Unimex from hiring counsel by taking all its property, and there has been no showing at an adversary hearing at which Unimex could be heard that the property belongs to the government. While we can conceive of a lawyer taking Unimex's case for free, or at the request of an owner of shares not owned by Velasquez, these fortuities did not occur, and Unimex's constitutional right to be heard by counsel could not properly be left to rely on them. Unimex could not have retained counsel for the criminal case for a contingent fee. Cal.R.Prof.Conduct 4-200(A); *Caplin & Drysdale v. United States,* 491 U.S. 617, 632 n. 10, 109 S.Ct. 2646, 2656 n. 10, 105 L.Ed.2d 528 (1989) ("contingent fees in criminal cases are generally considered unethical"). The denial of the right to counsel at trial never constitutes harmless error. *See United States v. Bohn,* 890 F.2d 1079, 1082 (9th Cir.1989).

Unimex's right to counsel under the Sixth Amendment and to Due Process under the Fifth Amendment were violated by taking away all of its assets, denying it an opportunity to show cause prior to its criminal trial that an amount it could have used for attorneys' fees was nonforfeitable, and then forcing it to trial without counsel. Its conviction is

REVERSED.

---

**3.** The case before us is not like *United States v. Elias,* 921 F.2d 870 (9th Cir.1990), where a Rule 41(e) motion in a criminal case that had been dismissed two months before was properly denied in favor of a pending civil forfeiture proceeding, because the availability of a legal remedy obviated any need for an equitable remedy. *Cf. United States v. Martinson,* 809 F.2d 1364, 1367 (9th Cir.1987).