NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3007-12T2
MOTION NO.  M-0474-13

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WESTERN WORLD, INC.,

    Defendant-Appellant.

```
┌─────────────────────────────┐
│   APPROVED FOR PUBLICATION   │
│                             │
│       March 30, 2015         │
│                             │
│      APPELLATE DIVISION      │
└─────────────────────────────┘
```

Motion Argued March 4, 2014 – Decided March 30, 2015

Before Judges Messano, Hayden and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 08-06-00186.

Susan Brody, Deputy Public Defender, II, argued the cause for Party-In-Interest Office of the Public Defender (Joseph E. Krakora, Public Defender, attorney; Ms. Brody, on the brief).

Jeffrey S. Mandel argued the cause for appellant Western World, Inc. (Cutolo Mandel, LLC, attorneys; Mr. Mandel, on the brief).

Gregory Robert Mueller, Assistant Prosecutor, argued the cause for respondent State of New Jersey (David J. Weaver, Sussex County Prosecutor, attorney; Mr. Mueller, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

This motion presents an issue of first impression in this State, specifically, whether the Office of the Public Defender (OPD) must represent on appeal a corporation convicted of an indictable offense and subsequently declared "indigent" by the trial court.

The facts and procedural history are undisputed. The Sussex County grand jury returned Indictment No. 08-06-00186, charging defendant Western World, Inc., and others with crimes that arose from a July 7, 2006 shooting during the reenactment of a gunfight at Wild West City, a business operated by defendant.[1] On April 11, 2012, represented by private counsel

---

[1] We previously described the circumstances in our unpublished opinion, Stabile v. Benson, No. A-4009-09 (App. Div. Sept. 29, 2011):

> [A]n actor [employed] by [defendant] . . . was participating in the reenactment of a gunfight at Wild West City. A fellow employee actor used a gun that did not contain blanks but rather live ammunition that had been brought to work by another employee sometime prior to the gunfight skit. [The actor] was shot in the head during the skit, suffered a catastrophic brain injury, and was severely and permanently disabled as a result.
>
> [Id. (slip op. at 4).]

(continued)

and pursuant to a plea agreement, defendant pled guilty as an accomplice to count fifteen of the indictment as amended to charge third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and 2C:2-6(b)(1). The State agreed to dismiss the balance of the indictment and recommend a one-year period of probation, subject to specific terms and conditions.

We have not been provided with a transcript of the plea proceedings as part of this motion record. However, the plea form and addendum, apparently prepared by the prosecutor, indicated that the State would also dismiss the indictment as to co-defendants Michael Stabile, at the time defendant's president, Nathan McPeak, one of its employees, and Cheyenne Corporation, an entity that owned the land upon which Wild West City operated. The addendum also indicated that the State would not seek a fine, and it set forth the State's recommendations regarding conditions of probation. Lastly, the addendum provided:

_____

(continued)
Although citing an unpublished opinion is generally forbidden, we do so here to provide a full understanding of the issues presented and pursuant to the exception in Rule 1:36-3 that permits citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law . . . ." See Badiali v. New Jersey Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd ___ N.J. ___, ___ (2015) (slip op. at 3).

> It is acknowledged that the amendment to Count [Fifteen] is legally proper and sufficient and will not be challenged on appeal. [Defendant] reserves the right to appeal the limited question of whether a carry permit was required by the actors under the facts of this case. [Defendant] waives any other appellate issues and agrees to withdraw the previously filed interlocutory appeal.

Stabile executed the plea form on behalf of defendant. The judgment of conviction entered on October 23, 2012, reflects that the judge placed defendant on probation for one year, imposed a $7500 fine to be paid over a period of three years, and imposed other mandatory financial penalties.

On November 8, 2012, defense counsel wrote to the regional office of OPD, indicating that defendant wished to appeal the issue reserved at the time of its guilty plea, as well as the imposition of the fine, and that his firm, which had not been compensated, would not represent defendant. He further noted the judge told Stabile at sentencing that "the corporation would be entitled to a Public Defender if it could not afford an attorney . . . ." Counsel stated that defendant, however, was "turned away by the Public Defender's Office." Citing our decision in In re CLM Construction Co., 277 N.J. Super. 329 (App. Div. 1994), defense counsel contended that defendant was entitled to representation by OPD on appeal.

Based on a December 19, 2012 letter from an investigator assigned to the vicinage Criminal Division Manager's Office, we gather that Stabile applied on behalf of defendant for the services of OPD on November 30. Stabile indicated that defendant had sold its interest in Wild West City in 2007. The corporation's only asset was "a 58 acre tract of land containing a large area of wetlands." Review of defendant's financial records revealed that it had "available bank funds of $1,874.56," and it was in debt "due to past loans and attorney fees." There was also a pending civil suit against defendant based upon the July 7, 2006 incident. As a result, the investigator approved defendant's application for OPD's services "upon the acceptance of . . . [OPD]."[2]

On February 26, 2013, OPD filed a notice of appeal on behalf of defendant, and, on September 11, OPD filed this motion

---

[2] The record does not contain any order from the trial judge appointing OPD to represent defendant on appeal. See R. 2:7-1 ("[A] person, who by reason of poverty, seeks relief from the payment of appellate filing fees . . . may without fee file with the trial court a verified petition setting forth the facts relied upon, and the court, if satisfied of the facts of indigency, shall enter an order waiving such payment and deposit.") (emphasis added); see also R. 2:7-2 ("All persons convicted of an indictable offense who are not represented by [OPD] and who desire to appeal, and who assert they are indigent, shall complete and file . . . with the court in which they were convicted, the appropriate form . . . . They shall thereupon be referred to [OPD], which shall represent them on such appeal . . . as would warrant the assignment of counsel . . . .") (emphasis added).

to be relieved as counsel. OPD argued that, pursuant to the Public Defender Act (the PDA), N.J.S.A. 2A:158A-1 to -25, it retained "some measure of discretion" regarding allocation of its "limited resources." OPD also questioned the "value of th[e] appeal," because defendant's probationary term was about to end in October 2013, and the adverse decision defendant sought to appeal involved the denial of its motion to dismiss the original charge in the indictment, not the amended charge to which it pled guilty. OPD also concluded that any appeal regarding the imposition of a fine lacked merit.

On September 23, Stabile filed a letter brief in opposition to the motion on behalf of defendant. Rule 1:21-1(c), however, provides that subject to certain exceptions that do not apply here, "an entity . . . other than a sole proprietorship shall neither appear nor file any paper in any action in any court of this State except through an attorney authorized to practice in this State." We therefore appointed counsel to represent defendant for purposes of this motion.[3]

In opposing OPD's motion, defendant argued that while OPD has discretion to allocate its resources, it "lacks discretion to deny representation to an indigent defendant," and, based

---

[3] The Court wishes to extend its thanks to counsel for accepting the designation.

upon the express language of the PDA, the motion must be denied. Additionally, citing N.J.S.A. 2A:158A-15.1, defendant contended that review of OPD's request lay with the vicinage Assignment Judge, although, because of the public interests at stake, defendant urged us to exercise our original jurisdiction pursuant to Rule 2:10-5 and decide the motion.[4]

We also requested that the State file a response to defendant's motion. Although agreeing that the appeal lacked merit, the assistant prosecutor who handled the prosecution in the Law Division took no position on OPD's request to be relieved.

At oral argument before us, OPD expanded upon its requested relief. OPD argued that because no "liberty" interest is at stake, it has no obligation to represent a corporate defendant under any circumstances. OPD argued that to the extent our prior decision in CLM Construction implies a contrary result, we should overrule that precedent.

---

[4] N.J.S.A. 2A:158A-15.1 provides in pertinent part: "A determination to grant or deny the services of the Public Defender shall be subject to final review by the Assignment Judge or his designated judge." As noted, there was no order from the Law Division appointing OPD, and the record fails to disclose whether OPD sought such a review. In any event, the statute has no particular application to the issue at hand, because pursuant to Rule 2:7-3, a defendant's requests for relief regarding the waiver of fees or the appointment of counsel on appeal because of indigency, see R. 2:7-1 and -2, are reviewable by this court.

The only discussion in a published New Jersey decision as to whether OPD is required to represent an indigent corporation appears in a footnote in CLM Construction. There, the trial judge appointed an OPD pool attorney, who had represented the corporate president as an individual co-defendant, to also represent the corporate defendant. CLM Const., supra, 277 N.J. Super. at 330-32. Both defense counsel and the assistant prosecutor advised the judge that OPD did not represent corporations. Id. at 331. Nevertheless, the judge indicated he would appoint counsel to represent the corporation. Id. at 332.

Although counsel provided personal justification for her refusal, the judge would not reconsider his order of appointment, ibid., and we granted counsel leave to appeal. Id. at 330. We reversed the order, concluding that the judge failed to comply with then-existing Rule 3:27-1,[5] failed to make full inquiry of the corporation or its president, and failed to

---

[5] Rule 3:27-1 was subsequently deleted, and its text combined with Rule 3:4-2. Pressler & Verniero, Current N.J. Court Rules, comment on R. 3:27-1 (2015). Rule 3:4-2(b)(5) now provides that at a defendant's first appearance, "the judge shall . . . if the defendant asserts indigence, and does not affirmatively . . . waive the right to counsel, assure that the defendant completes the appropriate application form for public defender services and files it with the criminal division manager's office[.]"

acknowledge the attorney's objections to the appointment; we remanded the matter for further proceedings. Id. at 334.

In a footnote, we discussed the assertion by counsel and the prosecutor that OPD did not represent corporate defendants. Id. at 331 n.2. We noted that our research "fail[ed] to uncover any New Jersey authority specifically considering this point." Ibid. We further observed that both State v. Rush, 46 N.J. 399 (1966), and State v. Horton, 34 N.J. 518 (1961), "discuss the indigent's right to appointed counsel[,]" but that neither case "distinguish[ed] between indigent individuals and indigent corporations," and we specifically cited N.J.S.A. 1:1-2 for the proposition that "a corporation is a person." CLM Const., supra, 277 N.J. Super. at 331 n.2. We then considered the "eight determining factors for eligibility for public defender representation" contained in N.J.S.A. 2A:158A-14, and noted that three factors "clearly only apply to people[,]" but the remaining five factors "may be read as applicable to people or corporations." Ibid.

We further observed that neither the federal Criminal Justice Act, 18 U.S.C.A. § 3006A, nor Federal Rule of Criminal Procedure 44(a), "mentions indigent corporations." Ibid. Additionally, we took note of two New York decisions, People v. BNB Realty Corp., 379 N.Y.S.2d 324 (N.Y. Crim. Ct. 1976), and

People v. Select Tire, 374 N.Y.S.2d 274 (N.Y. Crim. Ct. 1975), holding that "the right to counsel, which protects only individual or property rights, does not exist for corporations where corporations could neither be imprisoned nor fined, based on indigency." CLM Const., supra, 277 N.J. Super. at 331 n.2.

## II.

We address the issue our footnote in CLM Construction succinctly framed, but left unresolved, by first considering the nature and scope of the fundamental right to counsel embodied in the United States and New Jersey Constitutions.

## A.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." The Amendment guarantees the right of a criminal defendant to retain counsel of his choice, United States v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S. Ct. 2557, 2561, 165 L. Ed. 2d 409, 417 (2006), to the effective assistance of counsel, and if indigent and facing the potential loss of "life or liberty," to have counsel appointed at the government's expense. Scott v. Illinois, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979).

The right to counsel on appeal from a State court criminal conviction derives not from the text of the Sixth Amendment, but rather from the Fourteenth Amendment's equal protection provisions. As we have explained,

> Although there is no constitutional right to an appeal, Griffin v. Illinois, 351 U.S. 12, 18, 76 S. Ct. 585, 590, 100 L. Ed. 891, 898 (1956), once a right to appeal is provided, that right must be protected in a non-discriminatory fashion. Accordingly, an indigent defendant has a right to counsel on direct appeal. Douglas v. California, 372 U.S. 353, 357, 83 S. Ct. 814, 816, 9 L. Ed. 2d 811, 814 (1963).
>
> [State v. Coon, 314 N.J. Super. 426, 434 (App. Div.), certif. denied, 157 N.J. 543 (1998).]

The right to appointed counsel under the Sixth Amendment, however, exists only when "the litigant may lose his physical liberty if he loses the litigation." Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 25, 101 S. Ct. 2153, 2158, 68 L. Ed. 2d 640, 648 (1981). "[A]s a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." Id. at 26, 101 S. Ct. at 2159, 68 L. Ed. 2d at 649. "[I]t is the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel in criminal cases. . . ." Id. at 25, 101 S. Ct. at 2158, 68 L. Ed. 2d at 648. Thus, "the line defining the [federal]

11

constitutional right to appointment of counsel" is "actual imprisonment," not fines or the threat of imprisonment. Scott, supra, 440 U.S. at 373, 99 S. Ct. at 1162, 59 L. Ed. 2d at 389.

The federal circuits have held the Sixth Amendment applies to corporations.

> The sixth amendment describes the class of persons protected by its terms with the word "accused." This language does not suggest that the protection of sixth amendment rights is restricted to individual defendants.
>
> Furthermore, an accused has no less of a need for effective assistance due to the fact that it is a corporation. The purpose of the guarantee is to ensure that the accused will not suffer an adverse judgment or lose the benefit of procedural protections because of ignorance of the law. A corporation would face these same dangers unless the agent representing it in court is a competent lawyer. Thus, the right to effective assistance of counsel is not so peculiarly applicable to individuals that corporations should not be entitled to it.
>
> Nor can we see how this right is in any manner inconsistent with a corporation's status as a creature of state law. Consequently, we hold that the guarantee of effective assistance of counsel applies to corporate defendants.
>
> [United States v. Rad-O-Lite of Philadelphia, Inc., 612 F.2d 740, 743 (3d Cir. 1979) (internal citations omitted);

accord <u>United States v. Unimex, Inc.</u>, 991
<u>F.</u>2d 546, 549 (9th Cir. 1993).][6]

Significantly, however, federal courts have uniformly held that corporations, unlike defendants who are natural persons, do not have a Sixth Amendment right to appointed counsel at public expense.  See <u>United States v. Hartsell</u>, 127 <u>F.</u>3d 343, 350 (4th Cir. 1997); <u>Unimex, Inc.</u>, <u>supra</u>, 991 <u>F.</u>2d at 550; <u>United States v. Rocky Mt. Corp.</u>, 746 <u>F. Supp.</u> 2d 790, 803 (W.D. Va. 2010); <u>United States v. Rivera</u>, 912 <u>F. Supp.</u> 634, 638 (D.P.R. 1996); <u>Mid-Central/Sysco Food Servs., Inc. v. Reg'l Food Servs., Inc.</u>, 755 <u>F. Supp.</u> 367 (D. Kan. 1991).  The court in <u>Rocky Mt. Corp.</u>, <u>supra</u>, 746 <u>F. Supp.</u> 2d at 800, explained:

> [T]he corporation's right to counsel does not precisely mirror the individual's right to counsel.  It follows that when we speak of the corporation's Sixth Amendment right to counsel, we in no way imply that it can have counsel it cannot afford.  Rather, what the corporation has is the right to retain the counsel of its choice to represent its interests without undo governmental intrusion.  <u>Thus, a corporation's Sixth Amendment right in a criminal trial is its right to retain counsel while an individual's Sixth Amendment right includes the right to appointed counsel. Unlike an individual, a corporation cannot have what it cannot afford.</u>

---

[6] Our Supreme Court has also explicitly recognized that the Sixth Amendment's right to counsel applies to corporations.  <u>Matter of 668 Advisory Comm. on Prof'l Ethics</u>, 134 <u>N.J.</u> 294, 302 (1993).

> [(Emphasis added) (internal citation omitted).]

See also Peter J. Henning, The Conundrum of Corporate Criminal Liability: Seeking a Consistent Approach to the Constitutional Rights of Corporations in Criminal Prosecutions, 63 Tenn. L. Rev. 793, 885 (1996) (explaining that under the United States Constitution, "a corporation cannot claim the same measure or degree of protection that the individual defendant may claim"). The Sixth Amendment right to counsel is so limited because corporations cannot be imprisoned or face a loss of liberty. Unimex, Inc., supra, 991 F.2d at 550; Rivera, supra, 912 F. Supp. at 638.

B.

In part, Article I, Paragraph 10 of the New Jersey Constitution provides, "In all criminal prosecutions the accused shall have . . . the assistance of counsel in his defense."[7] The Court long ago noted, that "[f]rom very early days New Jersey has considered the matter of counsel for an indigent criminal defendant as one of absolute right under state law." Horton,

---

[7] Our prior constitutions also included a right to counsel. N.J. Const. of 1776, art. XVI ("all criminals shall be admitted to the same privileges of witnesses and counsel, as their prosecutors are or shall be entitled to"); N.J. Const. of 1844, art. I, ¶ 8 (in all criminal prosecutions the accused shall have the right to "the assistance of counsel in his defense"). See Rush, supra, 46 N.J. at 403.

<u>supra</u>, 34 <u>N.J.</u> at 522.  Since 1795, New Jersey has legislated the right of an indigent defendant to assigned counsel. <u>Patterson, Laws of the State of N.J.</u>, 162 (1800).[8]  <u>See also</u> Robert J. Martin and Walter Kowalski, <u>New Jersey Development: "A Matter of Simple Justice": Enactment of New Jersey's Municipal Public Defender Act</u>, 51 <u>Rutgers L. Rev.</u> 637, 645 (1999) (noting that New Jersey was the first state in the nation to enact legislation providing assigned counsel to represent indigent defendants in its courts).

In addition, "the right to appointed counsel for indigent litigants has received more expansive protection under our state law than federal law."  <u>Pasqua v. Council</u>, 186 <u>N.J.</u> 127, 147 n.5 (2006).  In many cases, the Court found support for such expansion in Article I, Paragraph 1 of the New Jersey Constitution, our State's equivalent of the due process provisions of the Fifth and Fourteenth Amendments of the Federal Constitution.  <u>Ibid.</u>

For example, State constitutional due process rights require the appointment of counsel for indigents in a variety of

---

[8] The 1795 Act provided that "the court, before whom any person shall be tried upon indictment, is hereby authorized and required to assign to such person, if not of ability to procure counsel, such counsel, not exceeding two, as he or she shall desire, to whom such counsel shall have free access at all seasonable hours."  <u>Paterson, Laws of New Jersey</u> 162 (1800).

situations where the loss of liberty is not at stake. See, e.g., N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 306-07 (2007) (termination of parental rights); Doe v. Poritz, 142 N.J. 1, 31 (1995) (Meagan's law tier classification); In re S.L., 94 N.J. 128, 142 (1983) (involuntary civil commitment).

State constitutional due process rights also require the appointment of counsel in circumstances involving the potential loss of liberty, albeit not as a result of a "criminal prosecution[]." See Pasqua, supra, 186 N.J. at 149 (holding due process requires the appointment of counsel for indigent parents at risk of incarceration resulting from child support enforcement hearings). Additionally, without referencing our State Constitution, in Rodriquez v. Rosenblatt, 58 N.J. 281 (1971), the Court extended the right to appointed counsel to indigent defendants in quasi-criminal municipal court prosecutions. Concluding that result was compelled "as a matter of simple justice," the Court held that "no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." Id. at 295. Relying on the principle of "simple justice," in State v. Hermanns, 278 N.J. Super. 19, 30 (App. Div. 1994), we

subsequently held that imposition of significant fines constituted a consequence of magnitude.[9]

Nonetheless, despite New Jersey's long history of assigning counsel to represent indigent defendants, and the expanded protections afforded under our constitution to other indigent litigants, our research has revealed no case in which a court has appointed counsel at public expense to represent an "indigent" corporation.

### III.

### A.

The arguments made by defendant and OPD require us to construe the PDA, and in doing so, we apply some well-recognized tenets. "In statutory interpretation, a court's role 'is to determine and effectuate the Legislature's intent.'" State ex rel. K.O., 217 N.J. 83, 91 (2014) (quoting Allen v. V & A Bros., 208 N.J. 114, 127 (2011)). "In construing any statute, we must give words 'their ordinary meaning and significance,'

---

[9] In an appendix to Part Seven of the court rules governing practice in the municipal courts, and applicable to "persons convicted of non-indictable offenses" seeking representation, the term "consequence of magnitude" is defined as: 1) any sentence of imprisonment; 2) any period of driver's license suspension, suspension of non-resident reciprocity privileges or driver's license ineligibility; or (3) any monetary sanction of $800 or greater in the aggregate. Guidelines for Determination of Consequence of Magnitude, Pressler & Verniero, Current N.J. Court Rules, Appendix to Part VII (2015).

recognizing that generally the statutory language is 'the best indicator of [the Legislature's] intent.'" Tumpson v. Farina, 218 N.J. 450, 467 (2014) (alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

"However, not every statute is a model of clarity. When the statutory language is sufficiently ambiguous that it may be susceptible to more than one plausible interpretation, we may turn to such extrinsic guides as legislative history, including sponsor statements and committee reports." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012) (citing Burns v. Belafsky, 166 N.J. 466, 473 (2001)). "We may also turn to extrinsic guides if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Ibid. (citations omitted). A court "should also 'be guided by the legislative objectives sought to be achieved by enacting the statute.'" Town of Kearny v. Brandt, 214 N.J. 76, 98 (2013) (quoting Wilson, supra, 209 N.J. at 572). "Accordingly, when a literal interpretation of individual statutory terms or provisions would lead to results inconsistent with the overall purpose of the statute, that interpretation should be rejected." Perrelli v. Pastorelle, 206 N.J. 193, 201 (2011).

The PDA provides in pertinent part that "[i]t shall be the duty of [OPD] to provide for the legal representation of any indigent defendant who is formally charged with the commission of an indictable offense[,]" such representation "shall include any direct appeal from conviction . . . ." N.J.S.A. 2C:158A-5 (emphasis added). Under the PDA, "'indigent defendant' means a person who is formally charged with the commission of an indictable offense, and who does not have the present financial ability to secure competent legal representation, as determined by the factors in [N.J.S.A. 2A:158A-14], and to provide all other necessary expenses of representation." N.J.S.A. 2A:158A-2 (emphasis added).

Although "person" is not defined by the PDA, defendant argues that, "[u]nless . . . otherwise expressly provided or there is something in the subject or context repugnant to such construction[,]" N.J.S.A. 1:1-2 supplies the meaning of certain statutory "words and phrases." "The word 'person' includes corporations . . . unless restricted by the context to an individual as distinguished from a corporate entity . . . ." Ibid.; see also N.J.S.A. 2C:1-14(g) (providing that under the Criminal Code, "'[p]erson[]' . . . include[s] any natural person and, where relevant, a corporation . . . ."). Defendant's argument is straightforward. Since defendant is a person,

charged with . . . an indictable offense and lacking the present financial ability to secure competent representation on appeal, it is an indigent defendant for purposes of the PDA, and, therefore, OPD shall provide for its representation on appeal.

The two statutory provisions cited by defendant that ostensibly supply the definition of "person" omitted from the PDA by the Legislature, however, are limited by their very terms. The definitions contained in N.J.S.A. 2C:1-14 are expressly limited to the Criminal Code. The meanings of statutory terms supplied by N.J.S.A. 1:1-2 must be rejected if "there is something in the subject or context [of a statute that is] repugnant to such construction." Specifically construing a statute's use of "person" interchangeably with "corporation[]" should be rejected if the word "person" is "restricted by the context to an individual as distinguished from a corporate entity . . . ." Ibid.

Decisions that have utilized the default meanings contained in N.J.S.A. 1:1-2 as aids in interpreting specific statutory language are too numerous to cite. See, e.g., Shelton v. Restaurant.com, Inc., 214 N.J. 419, 430-31 (2013) (applying the default meanings to terms left undefined by the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A.

A-3007-12T2

56:12-14 to -18).  There are far fewer examples of decisions in which the default meaning was explicitly rejected.

In In re Electrical Inspection Authorities, 127 N.J. Super. 295, 300 (App. Div. 1974), we considered, among other things, whether N.J.S.A. 45:5A-17, which by its terms applied only to municipalities, should be interpreted to also include counties. We recognized that, pursuant to N.J.S.A. 1:1-2, the default statutory meaning of "[m]unicipality" did not include counties. Id. at 301.  Nevertheless, we held:

> The question is one of legislative intent. In our view, the subject and context of the quoted section indicates that . . . the legislative intent was that the provisions of N.J.S.A. 45:5A-17 should apply to all governmental units, i.e., cities and counties which, with statutory authorization, provide for electrical inspections . . . and that therefore the word "municipality" should be construed to include a county.
>
> [Ibid. (emphasis added).]

In a different context, in Housing Authority of Atlantic City v. Coppock, 136 N.J. Super. 432, 434 (App. Div. 1975), we considered the default meaning of "month," as supplied by N.J.S.A. 1:1-2 ("[t]he word 'month' means a calendar month"). We concluded in that case that the notice of termination served upon the tenant thirty-one days prior to the filing of the complaint complied with N.J.S.A. 2A:18-61.1(b) (requiring "one

21

month's" prior notice). Ibid. We specifically rejected the argument that the Anti-Eviction Act required "the termination be directed to the end of the month."[10] Ibid. We held that given the express language of the lease that required thirty days' notice, "the definition of 'month' in N.J.S.A. 1:1-2 as a calendar month is inapplicable under these circumstances." Ibid.

Whether the default meanings supplied by N.J.S.A. 1:1-2 support or defeat a particular construction returns us to the lodestar of statutory interpretation — the intent of the Legislature. See Shelton, supra, 214 N.J. at 431-36 (examining "the background of the TCCWNA" to determine whether its "scope" or the "context in which the [undefined] term . . . [was] used [in the statute was] repugnant" to adopting the default meaning); see also In re Electrical Inspection, supra, 127 N.J. Super. at 300 (rejecting the default meaning when contrary to intent of the Legislature).

In Hardwicke v. American Boychoir School, 188 N.J. 69, 87 (2006), the Court had to consider "whether an institution . . . c[ould] be a 'person' under the [Child Sexual Abuse Act (CSAA), N.J.S.A. 2A:61B-1]." Finding the meaning of the term

_____

[10] Although not explained in the decision, we infer that the notice terminated the tenancy prior to the end of a calendar month.

"ambiguous," the Court "look[ed] beyond the language of the statute and consider[ed] extrinsic evidence [and] . . . statutory context[,]" id. at 88, as well as N.J.S.A. 1:1-2's definition of "person." Id. at 89. Ultimately, the Court concluded,

> [i]n light of the language of the statute as supplemented by the definition of person in Title I, the extrinsic evidence of legislative intent, and the State's strong policy to hold both active and passive child abusers accountable, we find that the [defendant] is a person under the passive abuse provision of the CSAA.
>
> [Id. at 91.]

In short, if the default meaning of "person" supplied by N.J.S.A. 1:1-2 leads to a result contrary to the Legislature's intent when it enacted the PDA, that meaning must be rejected. We are required, therefore, to examine the legislative history of the PDA.

### B.

As already noted, New Jersey's history of providing counsel to indigent criminal defendants predates passage of the PDA by nearly two centuries. From 1948 to 1967, counsel were assigned to indigent defendants under various Rules of Court. For example, Rule 1:12-9(a) (repealed 1967) provided that "[w]here a person charged with a crime appears in a trial court without counsel, the court shall advise him of his right to counsel

23

. . . and if indigent, assign counsel to represent him. . . ." The application for the assignment of counsel (Form 5A), set forth in the Appendix to the 1967 Court Rule, contained questions specifically geared toward an individual, not a corporation, including whether the defendant was married, had children, earned a salary, or was employed. [11]

"In Rush, supra, 46 N.J. at 412, the Court decided that the time had come to relieve the New Jersey bar of the task of defending without compensation indigents accused of indictable crimes." In re Cannady, 126 N.J. 486, 489 (1991). The immediate solution arrived at by the Rush Court was to impose the costs of providing counsel upon the counties. Ibid. The

---

[11] The Court recently noted that the current forms similarly collect

> general personal data, such as name, address, social security number, date of birth, and marital status . . . . background information on the defendant's family, military service, and education . . . [and] potentially sensitive information about a defendant's past and present physical condition, mental health, and drug and alcohol use and treatment.
>
> [In re Custodian of Records, Criminal Div. Manager, 214 N.J. 147, 159-160 (2013).]

We attach a sample of the current form as an appendix to this opinion. As is apparent, the form implicitly seeks information unique to a natural person.

Court delayed the effective date of its decision, however, to permit the Legislature to decide how best to provide for the indigent representation of criminal defendants indicted for crimes. Id. at 489-90. The Legislature responded by enacting the PDA in 1967, L. 1967, c. 43, replacing the assigned counsel system with a statewide program for the defense of indigents at public expense.

To some degree, the PDA was intended to address the expected increased costs to individual counties as a result of the Rush decision. This is clear from sponsors' statements in support of earlier versions of the bill, see e.g., Sponsor's Statement to A. 752, at 2 (1967) (noting that increased costs to counties would result in "an undue burden"), and the Governor's Statement to S. 287, (1967) (noting that appropriations to fund the public defender system were the "result of a determined effort by the State government to . . . be of assistance to our counties").

Foremost and primarily, however, the PDA was intended to meet the state's obligation under the Sixth Amendment to provide court-appointed counsel to indigent defendants, as was then very recently applied to the states through the Fourteenth Amendment's Due Process Clause in Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). See Public Hearings

before Special (Senate) Committee to Determine the Advisability of providing for the Establishment of a Public Defender System in the Several Counties, at 2, 27, 31, 40, 59, 11A (Sept. 8, 1965) (noting that Gideon imposed a "tremendous responsibility" on the State to insure an indigent defendant's right to appointed counsel).

The PDA as enacted implemented recommendations contained in the December 22, 1966 report of the "Commission on the Defense of Indigent Persons Accused of Crime" ("Report").[12] See Cannady, supra, 126 N.J. at 490; Sponsor's Statement to S. 287, at 7 (1967); Governor's Statement to S. 287, supra. In considering who was entitled to appointed counsel at public expense, the Commission implicitly spoke in terms of natural persons:

> Perhaps the most difficult problem is the matter of defining who is "indigent." Several decades ago the term meant an actual pauper who was entirely without means.[13] The term no longer has this narrow significance. In general, it is now widely understood as referring to a person who is unable to afford the cost of engaging counsel to represent him.
>
> [Report, supra, at 5 (emphasis added).]

---

[12] The Report can be found at 90 N.J.L.J. 17 (Jan. 12, 1967).

[13] A "pauper" is defined as "[a] very poor person, esp[ecially] one who receives aid from charity or public funds." Black's Law Dictionary 1243 (9th ed. 2009).

Similarly, earlier public hearings on the proposed PDA, where pre-eminent lawyers of the day engaged in all aspects of the legal profession testified, contain repeated references to the need to provide publicly-financed counsel to "individuals," "paupers" and "poor men," without any reference to corporations. Public Hearings, supra, at 2, 41, 60.

The Court has said that the Legislature created OPD to "ensure that the State fulfilled its constitutional obligation to provide legal services for indigent defendants." In re Custodian of Records, supra, 214 N.J. at 158. The PDA expressly provides, "It is hereby declared to be the policy of this State to provide for the realization of the constitutional guarantees of counsel in criminal cases for indigent defendants . . . ." N.J.S.A. 2A:158A-1 (emphasis added). Tellingly, however, the PDA does not track exactly the language of the Sixth Amendment or the right to counsel provided by our Constitution, both of which accord the right to "the accused" in criminal prosecutions.

C.

As initially adopted, the PDA did not provide for the representation of indigent defendants charged with non-indictable offenses or juveniles. See In re State in Interest of Antini, 53 N.J. 488, 492 (1969). With regard to non-

indictable offenses, in 1974, in response to the Court's decision in Rodriguez, supra, 58 N.J. at 281, the Legislature amended the PDA, L. 1974, c. 33, to expand representation to "include persons charged as juvenile delinquents or juveniles in need of supervision, persons charged with parole violation, and indigent disorderly persons." Sponsor's Statement to A. 1298 at 2 (1974). See In re Contempt of Spann, 183 N.J. Super. 62, 67 (App. Div. 1982). N.J.S.A. 2A:158-5.2 provides:

> The Public Defender shall . . . provide for the legal representation of any person charged with a disorderly persons offense or with the violation of any law, ordinance or regulation of a penal nature where there is a likelihood that the persons so charged, if convicted, will be subject to <u>imprisonment</u> or, in the opinion of the court, any <u>other consequence of magnitude.</u>
>
> [(emphasis added).]

The Legislature clearly intended to expand the universe of offenses triggering the right to counsel at public expense for indigent defendants. The amendment did not, however, expand the definition of "indigent defendants" to include indigent corporations.[14]

---

[14] The amendment also did not define the term "consequence of magnitude." The current guidelines include two criteria, a sentence of imprisonment and suspension of a driver's license, that can only apply to natural persons. Pressler & Verniero, supra, Appendix to Part VII (2015). One criterion, "any

(continued)

In any event, the Legislature failed to appropriate the funds necessary to expand OPD to the municipal court level. As a result, OPD was never required to assume its statutory obligation under N.J.S.A. 2A:158-5.2.  Madden v. Delran, 126 N.J. 591, 612 (1992); Spann, supra, 183 N.J. Super. at 67.[15]

As originally enacted, the PDA also did not provide for the representation of indigent juveniles.  However, just thirteen days after the PDA was enacted, on May 15, 1967, the United States Supreme Court held that an indigent juvenile had the right to be furnished with counsel during "proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed. . . ."  In re Gault, 387 U.S. 1, 41, 87 S. Ct. 1428, 1451, 18 L. Ed. 2d 527, 554 (1967).

As a result, our Supreme Court amended former Rule 6:3-4(c) and (d) (1968 (now repealed)), to provide for the assignment of

---

(continued)
monetary sanction of $800 or greater in the aggregate," could apply to natural persons and corporations.

[15] In 1997, the Legislature enacted the Municipal Public Defender Act, which created a separate system of municipal public defenders, N.J.S.A. 2B:24-1 to -17.  The legislation does not shed light on the issue presented, since it similarly requires representation of an "indigent person," N.J.S.A. 2B:24-2, who likely, "if convicted, . . . will be subject to imprisonment or other consequence of magnitude." N.J.S.A. 2B:24-7(a).

counsel for indigent juveniles, albeit, not by the OPD, but under the old alphabetical rotation system as set forth in Rule 1:12-9(c) (1968 (now repealed)). The Court in Antini, supra, 53 N.J. at 494-95, directed, as it had in Rush, supra, 46 N.J. at 415, that "lawyers who provided services since the decision in Gault was handed down should be reimbursed for any out-of-pocket expenditures, and the juvenile court judges are authorized to enter orders, after appropriate application, directing payment thereof by the particular county."

The Legislature's response was again swift. It amended the PDA, L. 1968, c. 371, to provide for representation of juveniles by the OPD:

> [T]he Public Defender shall . . . provide for the legal representation of any person who is charged as a juvenile delinquent or as a juvenile in need of supervision and where in the opinion of the juvenile judge the prosecution of the complaint may result in the institutional commitment of such person.
>
> [N.J.S.A. 2A:158A-24.]

### D.

These two examples demonstrate the Legislature's clear ability to amend the PDA in order to address the rapidly changing legal landscape whenever the rights of indigent defendants are implicated. In both situations, the impetus behind the amendments to the PDA were the vital personal liberty

interests at stake. On other occasions, the Legislature has not hesitated to enact legislation, separate from the PDA, to ensure that the rights of indigent natural persons are protected by representation through OPD.

For example, the Legislature enacted legislation that requires the Office of Parental Representation in OPD to represent parents and guardians charged in abuse and neglect cases, or those facing the loss of parental rights, in accord with their constitutional rights. See, e.g., B.R., supra, 192 N.J. at 306-07; N.J.S.A. 9:6-8.21; N.J.S.A. 9:6-8.30; N.J.S.A. 9:6-8.43(a); N.J.S.A. 30:4C-15.4(a).

Similarly, the Division of Mental Health Advocacy in OPD provides representation at civil commitment hearings, as constitutionally guaranteed, see S.L., supra, 94 N.J. at 142, and statutorily required, not under the PDA, but pursuant to the civil commitment statutes and court rules. See, e.g., N.J.S.A. 30:4-27.11(c); N.J.S.A. 30:4-27-12(d); R. 4:74-7(c)(2); R. 4:86-10. OPD counsel is also provided by statute when an indigent defendant faces commitment under the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to -27.38, as constitutionally guaranteed, In re Commitment of D.L., 351 N.J. Super. 77, 89 (App. Div. 2002), certif. denied, 179 N.J. 373 (2004), and as

statutorily required by Title 30.  N.J.S.A. 30:4-27.29(c); N.J.S.A. 30:4-27.31.

E.

We distill from this discussion the following. The PDA was born from a legislative desire to practically and publicly fund the criminal defense of indigents, as required by evolving federal constitutional doctrine and the long history of New Jersey's constitutional and statutory right to counsel. The legislative history of the PDA demonstrates that, at its inception, the focus of the proposed legislation was on the protection of the rights of "indigent people" who were natural persons, not corporations or other business entities. Although the Legislature could have specifically included corporations or other business entities within the PDA's definition of "indigent defendants," it declined to do so. See, e.g., Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009) ("The Legislature knows how to draft a statute to achieve that result when it wishes to do so."). Yet, whenever necessary, the Legislature has either amended the PDA or enacted other laws to specifically provide for the representation by OPD of natural persons whose personal liberty rights may be adversely affected, or who face other consequences of magnitude.

32

We conclude, therefore, that it "is repugnant" "to the subject [and] context" of the PDA, N.J.S.A. 1:1-2, to construe the word "person" as used in the PDA to include a corporation. Such a construction is contrary to the Legislature's intent when it first enacted the PDA, an intention since restated by various amendments to the PDA and other legislation.

F.

Our conclusion is supported by an examination of federal decisions that have interpreted language in the CJA and the Dictionary Act, 1 U.S.C.A. § 1 to § 8, that is similar to that of the PDA.

The court in Unimex, supra, 991 F.2d at 549-50, explained that the CJA

> provides for appointment of counsel for an indigent "person," but does not say whether a corporation is a "person" for purposes of appointment of counsel. 18 U.S.C. § 3006A(a). The word "person" in a federal statute includes corporations "unless the context indicates otherwise." 1 U.S.C. § 1. In the statute providing for appointment of counsel, the context does indeed "indicate otherwise." . . . . The statutory context includes a list of classes of persons eligible, with catch-all clauses for a financially eligible person who "is entitled to appointment of counsel under the sixth amendment to the constitution" or "faces loss of liberty." 18 U.S.C. § 3006A(a)(1)(H),(I). If the purpose of the statute is to assure that criminal defendants' constitutional right to appointed counsel is protected, then no

33

> appointments are needed for corporations
> . . . . Although authority is scarce, we
> conclude from context that the CJA does not
> so provide either.

As a result, the federal courts have uniformly denied indigent corporations representation under the CJA. In re Grand Jury Proceedings, 469 F.3d 24, 26 (1st Cir. 2006); Hartsell, supra, 127 F.3d at 350; Rivera, supra, 912 F. Supp. at 638; United States v. Hoskins, 639 F. Supp. 512, 514 (W.D.N.Y. 1986), aff'd o.b. 875 F.2d 308 (2d Cir. 1989).

IV.

We note that the legislatures of a number of our sister states have implicitly limited the right to appointed counsel at public expense to indigent criminal defendants who are natural persons. Some have done so by conditioning the appointment to situations where imprisonment is probable or possible. See e.g., Ark. Code Ann. § 16-87-213(a)(1)(A), 213(a)(2)(A) (2014) (setting forth procedure for "any person charged with an offense punishable by imprisonment" to obtain public defender services); Conn. Gen. Stat. § 51-289, 51-296 (2014) (appointing the public defender unless the court states on the record that the sentence will not involve incarceration); Ga. Code. Ann. § 17-12-23(a)(1) (2014) (providing for representation in actions where "there is a possibility that a sentence of imprisonment or probation or a suspended sentence of imprisonment may be adjudged"); Ind. Code

Ann. § 33-40-1-2 (a)(1) (2014) (defining person entitled to representation by the public defender as one "confined in a penal facility in Indiana or committed to the department of correction due to a criminal conviction"); La. Rev. Stat. Ann. § 15:142(A) (2014) (citing the Louisiana constitution, which requires indigence and charges for an offense punishable by imprisonment); Mich. Comp. Laws Serv. § 780.983(d) (2014) (requiring that a defendant both indigent and "prosecuted or sentenced for a crime for which an individual may be imprisoned upon conviction"); N.H. Rev. Stat. Ann. § 604-A:1 (making representation at public expense a "precondition of imprisonment"); N.Y. County Law § 722-a (2014) (public defenders are appointed when "a term of imprisonment is authorized upon conviction thereof"); Ohio Rev. Code Ann. §120.06(A)(1) (2014) (limiting representation to those "who are charged with the commission of an offense or act for which the penalty or any possible adjudication includes the potential loss of liberty"); Utah Code Ann. § 77-32-302(1) (2014) (providing for defense "if the indigent is under arrest for or charged with a crime in which there is a substantial probability that the penalty to be imposed is confinement in either jail or prison"); Va. Code Ann. § 19.2-159(A) (2014) (public defender available if defendant is indigent and "the charge against him . . . may be punishable by

death or confinement in the state correctional facility or jail"); W. Va. Code Ann. § 29-21-2(2) (defining an "eligible proceeding" for public defender services as one where "criminal charges [] may result in incarceration") (2014); Wis. Stat. § 977.08(2) (2014) (authorizing the State Public Defender to assign attorneys to represent indigents in "crime[s] against life," other felonies, and misdemeanors that are "punishable by imprisonment").

Other states have defined the class of indigent defendants eligible for appointed counsel at public expense such that only natural persons could qualify. See e.g., Alaska Stat. § 18.85.170(4) (2014) (defining indigent person as one who "does not have sufficient assets, credit, or other means to provide for payment of an attorney and all of the necessary expense of representation without depriving the party or the party's dependents of food, clothing, or shelter"); Or. Rev. Stat. § 135.050(1)(d) (2014) (eligible if "financially unable to retain adequate representation without substantial hardship in providing basic economic necessities to the defendant or the defendant's dependent family"); R.I. Gen. Laws. § 12-15-8 (defining indigent defendants eligible for the public defender as those who "after payment of necessary expenses for food,

36

shelter and medical care, do[] not have sufficient income or assets to enable him or her to retain counsel").

In Illinois, "[t]he constitutional right to appointed counsel is limited to criminal proceedings which result in actual imprisonment, and the statutory right to counsel is similarly limited." Chicago v. Pudlo, 462 N.E.2d 494, 498 (Ill. App. Ct. 1983), cert. denied, 471 U.S. 1066, 105 S. Ct. 2140, 85 L. Ed. 2d 497 (1985). Notably, however, Illinois law also specifically provides that "[i]f the accused is a dissolved corporation and is not represented by counsel, the court may, in the interest of justice, appoint as counsel a licensed attorney of th[e s]tate." 725 Ill. Comp. Stat. 5/113-3(a) (2014).

V.

We conclude the Legislature never intended that an indigent corporation be provided with counsel at public expense pursuant to the PDA. We therefore relieve OPD of any further representation of defendant in the prosecution of this appeal.

We also reaffirm, however, that because corporations are entitled to the assistance of counsel under both the United States Constitution and New Jersey Constitution, because New Jersey precedent requires the appointment of counsel whenever a defendant is charged with a crime or likely faces a consequence of magnitude, and because our Rules of Court specifically

37                                                        A-3007-12T2

provide for the appointment of counsel in such circumstances on appeal, the Clerk's Office shall work with the vicinage Criminal Division Manager to designate counsel to represent defendant hereafter.[16]

An appropriate order has been entered.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[16] We reach this conclusion independently of our court rules which, absent certain limited exceptions, do not permit corporations to appear as self-represented litigants. R. 1:21-1(c).

## Uniform Defendant Intake
## Superior Court of NJ

| LAST NAME | FIRST NAME | MIDDLE NAME |
|---|---|---|
| | | |

| ALSO KNOWN AS | SPN | SBI # | DRIVER'S LICENSE NUMBER |
|---|---|---|---|
| | | | |

| DATE OF BIRTH | AGE | PLACE OF BIRTH | SOCIAL SECURITY NUMBER | SEX ☐ M ☐ F | RACE |
|---|---|---|---|---|---|
| | | | | | |

| HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR | DISTINGUISHING MARKS |
|---|---|---|---|---|
| | | | | |

| ALIEN STATUS | CITIZENSHIP ☐ US ☐ OTHER | OTHER CITIZENSHIP (NATIONALITY) | INTERPRETER NEEDED ☐ YES ☐ NO | LANGUAGE |
|---|---|---|---|---|
| | | | | |

| ATTORNEY'S NAME | COMPLAINT DATE | ARREST DATE |
|---|---|---|
| | | |

| POLICE AGENCY | COUNTY | COURT OF FILING |
|---|---|---|
| | | |

| COMMITMENT NO. | INITIAL BAIL AMOUNT $ | INITIAL BAIL TYPE ☐ FULL SURETY ☐ 10% CASH ☐ ROR ☐ OTHER _____ | BAIL STATUS ☐ JAIL ☐ ROR ☐ BAIL |
|---|---|---|---|
| | | | |

| CHARGES | COMPLAINT NUMBERS | PROMIS NUMBERS | INDICTMENT / ACC. NUMBER |
|---|---|---|---|
| | | | |

| CODEFENDANTS' NAMES | COMPLAINT NUMBERS | PROMIS NUMBERS | INDICTMENT / ACC. NUMBER |
|---|---|---|---|
| | | | |

### 1. Criminal History

| PRIOR RECORD ☐ YES ☐ NO | PENDING CHARGES ☐ YES ☐ NO |
|---|---|
| | |

### 2. Residence

| NUMBER OF YEARS IN COUNTY: NJ: US: | RESIDENCE STATUS ☐ RENT ☐ OWN ☐ OTHER | HOW LONG AT CURRENT ADDRESS |
|---|---|---|
| | | |

| ADDRESS | ZIP CODE |
|---|---|
| | |

| NAME OF COHABITANT | RELATIONSHIP TO DEFENDANT | RESIDENCE PHONE | EMERGENCY PHONE |
|---|---|---|---|
| | | | |

| PRIOR ADDRESS | ZIP CODE |
|---|---|
| | |

| NAME OF COHABITANT | RELATIONSHIP TO DEFENDANT | HOW LONG AT THIS ADDRESS |
|---|---|---|
| | | |

| MARITAL STATUS ☐ SINGLE ☐ MARRIED ☐ SEPARATED ☐ DIVORCED ☐ WIDOWED ☐ CIVIL UNION ☐ DOMESTIC PARTNERSHIP | NUMBER OF DEPENDENTS | PAY SUPPORT ☐ YES ☐ NO |
|---|---|---|
| | | |

| DOES THE DEFENDANT HAVE PRIMARY CARE OF CHILDREN OR OTHER DEPENDENTS? ☐ YES ☐ NO ☐ N/A | IF YES, HAS THE DEFENDANT MADE ALTERNATE CARE ARRANGEMENTS? ☐ YES ☐ NO | HAS ALTERNATE CARE INFORMATION BEEN OBTAINED OR REFERRAL MADE? ☐ YES ☐ NO |
|---|---|---|
| | | |

| DEFENDANT SUPPLEMENTAL CONTACT | RELATIONSHIP TO DEFENDANT | TELEPHONE NUMBER |
|---|---|---|
| | | |

| CONTACT PERSON'S ADDRESS | ZIP CODE |
|---|---|
| | |

| COMMENTS |
|---|
| |

Revised: 05/2013, CN: 10693          UDIR - 1

39

A-3007-12T2

# Uniform Defendant Intake:  Superior Court of NJ

| LAST NAME | FIRST NAME | MIDDLE NAME |
|---|---|---|
| | | |

## 3.  Defendant's Health Status

| REPORTED PHYSICAL HEALTH | REPORTED MENTAL HEALTH | DRUG / ALCOHOL USE | USE AT TIME OF OFFENSE |
|---|---|---|---|
| ☐ GOOD    ☐ POOR | ☐ GOOD    ☐ POOR | ☐ PRESENT  ☐ PAST  ☐ NONE | ☐ YES  ☐ NO |

## 4.  Physical Appearance / Additional Comments

PHYSICAL APPEARANCE DESCRIPTION

MEDICATION / FREQUENCY

## 5.  Substance Abuse History

| SUBSTANCE USED | FREQUENCY | METHOD OF INGESTION | INITIAL USE | LAST USE |
|---|---|---|---|---|
| | | | | |

## 6.  Medical / Mental Health / Substance Abuse Treatment History & Insurance Coverage

| TREATMENT FACILITIES | LOCATIONS | DATES OF TREATMENT |
|---|---|---|
| | | |

DIAGNOSIS / COMMENTS

| ADULT DIAGNOSTIC TREATMENT CENTER EVALUATION ORDERED? ☐ YES  ☐ NO | DATE ORDERED | COPY RECEIVED ☐ YES  ☐ NO |
|---|---|---|
| PSYCHOLOGICAL EVALUATION ORDERED? ☐ YES  ☐ NO | DATE ORDERED | COPY RECEIVED ☐ YES  ☐ NO |

| REFERRED FOR SUBSTANCE ABUSE EVALUATION? ☐ YES  ☐ NO | TASC ☐ YES  ☐ NO | OTHER AGENCY |
|---|---|---|

| HEALTH INSURANCE ☐ YES  ☐ NO | INSURED'S NAME | POLICY NUMBER |
|---|---|---|

INSURANCE CARRIER NAME AND ADDRESS

COMMENTS

Revised: 05/2013, CN: 10593                    UDIR - 2

A-3007-12T2

## Uniform Defendant Intake:  Superior Court of NJ

| LAST NAME | FIRST NAME | MIDDLE NAME |
|---|---|---|
|  |  |  |

### 7. Employment

CURRENT EMPLOYER'S NAME AND ADDRESS

| OCCUPATION | YEARS / MOS. | PHONE | |
|---|---|---|---|

| SKILLS | SALARY | IF UNEMPLOYED, HOW LONG | HOW SUPPORTED |
|---|---|---|---|

| PREVIOUS EMPLOYER'S NAME AND ADDRESS | FROM | TO |
|---|---|---|

EMPLOYMENT VERIFICATION AND WORK HISTORY

### 8. Financial Status

| | | | | |
|---|---|---|---|---|
| Net Monthly Income | $ | House(s) / Land Market Value | $ | |
| Spousal / Cohabitant Contribution | $ | Value of All Motor Vehicles | $ | |
| Unemployment / Disability | $ | Cash | $ | |
| Social Security | $ | Current Balance Checking Accts. | $ | |
| Veterans Administration | $ | Current Balance Savings Accts. | $ | |
| Pension | $ | Civil Judgment Awards / Pending | $ | |
| Public Assistance / Subsidies | $ | Current Value of Stocks / Bonds | $ | |
| Child Support / Alimony | $ | Face Value of CDs / IRAs / 401Ks | $ | |
| Food Stamps | $ | Money Market Accounts | $ | |
| Housing Subsidies | $ | Retrievable Bail Amt. & Location | $ | |
| Trust Fund Income | $ | | | |
| Institutional Wages | $ | Other Assets | $ | |
| Income From Rental Properties | $ | Other Assets | $ | |
| **TOTAL MONTHLY INCOME** | $ | **TOTAL ASSETS** | $ | |
| Rent | $ | Mortgage Loan Balances | $ | |
| Mortgage | $ | Vehicle Loan Balances | $ | |
| Property Taxes | $ | Support Arrearage | $ | |
| Child Support / Alimony | $ | Medical / Dental / Hospital Debts | $ | |
| PAID THROUGH PROBATION DEPT. | ☐ YES  ☐ NO | Attorney Fees | $ | |
| Vehicle Loans & Insurance | $ | Fines Owed to Other Courts | $ | |
| Household Utilities | $ | Credit Card Balances | $ | |
| Other Household Expenses | $ | Civil Judgments Owed | $ | |
| Other Loans & Expenses | $ | Other Debts and Expenses | $ | |
| **TOTAL MONTHLY PAYMENTS** | $ | **TOTAL DEBTS** | $ | |

FINANCIAL COMMENTS INCLUDING DEFENDANTS REPORTED ABILITY TO PAY COURT IMPOSED ASSESSMENTS PER MONTH:

I WISH TO BE REPRESENTED BY    ☐ PUBLIC DEFENDER    ☐ PRIVATE COUNSEL

**WARNING REGARDING CONFIDENTIALITY**
At the direction of the Assignment Judge acting on his or her own initiative, or in response to a valid grand jury subpoena with the approval of the Assignment Judge, this page (UDIR-3) may be produced to a grand jury and a prosecutor.

### CERTIFICATION

I certify that the foregoing statements made by me in the above Financial Statement are true.  If I have indicated above that I wish to be represented by a public defender, I am submitting this Financial Statement in support of my application to establish indigency, and I am aware that if any statements made by me in the Financial Statement are willfully false, I am subject to punishment as provided by R. 1:4-4(b).

| DEFENDANT'S SIGNATURE | | DATE |
|---|---|---|

| INTERVIEWER'S SIGNATURE | TITLE | DATE |
|---|---|---|

Revised: 05/2013, CN: 10693                    UDIR - 3

A-3007-12T2

# Uniform Defendant Intake: Superior Court of NJ

| LAST NAME | FIRST NAME | MIDDLE NAME |
|---|---|---|
| | | |

## 9. Family History

PARENTAL

MARITAL / CHILDREN

HOME / NEIGHBORHOOD / ENVIRONMENT

## 10. Military Service History

| BRANCH | DISCHARGE | SERVICE PERIOD |
|---|---|---|
| | ☐ HONORABLE ☐ GENERAL ☐ OTHER | |

COMMENTS

## 11. Education

| LAST SCHOOL YEAR COMPLETED (1-20) | GRADUATE | YEAR GRADUATED | CURRENTLY IN SCHOOL | MAJOR / SPECIAL TRAINING |
|---|---|---|---|---|
| | ☐ YES ☐ NO ☐ GED | | ☐ YES ☐ NO | |

| LAST SCHOOL ATTENDED | AGE LAST ATTENDED |
|---|---|
| | |

COMMENTS

## 12. Other Information / Comments

COMMENTS